Case 4:21-cv-01530   Document 32   Filed on 08/20/21 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
August 20, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK SHIH, M.D., P.A.; dba NEURO BRAIN SPINE NEUROSURGERY CLINIC, | § § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:21-CV-1530 |
| BLUE CROSS & BLUE SHIELD OF TEXAS INC, *et al*, | § § § § | |
| Defendants. | § | |

## **MEMORANDUM & ORDER**

This is a medical billing dispute between Plaintiff Patrick Shih, M.D., P.A., and Defendants Blue Cross & Blue Shield of Texas, Inc., and various employers whose health plans Blue Cross administers. Shih alleges that he provided both emergent and pre-authorized non-emergent medical services, as an out-of-network provider, to over 200 patients with Blue Cross plans, and that Blue Cross underpaid him by nearly $4 million. Shih sued Defendants in state court on six contract theories, as well as for tortious interference, violation of unspecified Texas health laws, and violation of the Texas Prompt Payment of Claims Act. Blue Cross removed.

Shih filed a Motion to Remand (Doc. 21), which the Court denied orally at a motion hearing on August 20, 2021. At the parties' request, the Court sets out the reasons for that denial here.

Defendants contended that jurisdiction is proper because at least some of Shih's claims are subject to complete ERISA preemption. For the reasons given below, the Court agrees.

**I.    LEGAL STANDARD**

ERISA preemption is governed, as the parties agree, by the two-prong test of *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). Under *Davila*, removal is appropriate if (1) the plaintiff, "at

1

some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210.

## II. ANALYSIS

For the reasons given below, the Court holds that the *Davila* test is met here.

### A. *Davila* Prong One

The first prong of the Davila test is satisfied here because Shih could have brought his claims under ERISA § 502(a)(1)(B). "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim" via an assignment of that claim. *Harris Methodist Fort Worth v. Sales Support Servs., Inc.*, 426 F.3d 330, 333–34 (5th Cir. 2005). Here, Blue Cross has adduced claim forms in which Shih indicated that 34 of the disputed patients had assigned their benefits to him. (Doc. 1 ¶ 28.) Perhaps more to the point, Shih spontaneously conceded in his Reply Brief that 13 of those 34 patients executed written assignments. (Doc. 27 at 4.) All of those patients were participants in plans that provided: "If a written assignment of benefits is made by a Participant to a Provider and the written assignment is delivered to the Carrier with the claim for benefits, the Carrier will make any payment directly to the provider." (Doc. 1-3 at 128.) Therefore, Shih could have sued under ERISA § 502(a)(1)(B).

Shih's primary argument to the contrary is that Blue Cross has failed to offer documentary evidence of the assignments and relied instead on "claim forms and other miscellanea" that are "no substitute for actual assignments." (Doc. 21 at 19; *e.g.*, Doc. 1-4 at 110.) The immediate and fatal problem with this argument is that Shih has conceded that he received assignments from 13 patients at issue here. Anyhow, this Court has consistently accepted claim forms as proof of assignments. *See Spring E.R., LLC v. Aetna Life Ins. Co.*, No. H-09-2001, 2010 WL 598748, at *3

(S.D. Tex. Feb. 17, 2010) (Ellison, J.); *Chu v. First Health Life & Health Ins. Co.*, No. H-06-3562, 2007 WL 7216760, at *2 (S.D. Tex. July 31, 2007) (Ellison, J.). The only case Shih cites in purported contravention is inapposite: the court there said nothing as to the propriety of claim forms as proof and expressly noted that neither party alleged assignment. *See Advanced Arthroscopic Outpatient Surgery v. Principal Life Ins. Co.*, No. M-07-111, 2008 WL 11483072, at *3 (S.D. Tex. Mar. 28, 2008). Thus, the available evidence properly establishes the assignments.

Shih's other arguments are equally unavailing. Shih contends that the claim forms misrepresent whether he accepted assignments because, when he checked a box indicating "yes" to the "Accept Assign?" prompt in his third-party medical billing software, he understood his response to mean merely that "the payor [should] send payment directly to the physician." (Doc. 21-1 at 4.) Again, this point is immaterial because Shih concedes that 13 disputed patients executed written assignments. Anyhow, even accepting Shih's account, the fact that he assented to the "Accept Assign?" prompt cuts against his argument that he received no assignments; evidently, by checking the "yes" box, he sought to recover benefits to which his patients were entitled under their employer-sponsored health plans and thus under ERISA. Shih also contends that the Blue Cross plans at issue contained anti-assignment provisions that void any alleged assignments—but this argument is based on the plans' general anti-assignment provision and ignores their express carve-out for a "written assignment of benefits." (*E.g.*, Doc. 1-3 at 128.) And to the extent that Shih contended in his Reply Brief that the anti-assignment's carve-out provision was not triggered because the "written assignment [was not] delivered to the Carrier with the claim for benefits," that argument was not raised in the Motion to Remand and therefore will not be considered. *E.g.*, *Murthy v. Abbot Lab'ys*, 847 F. Supp. 2d 958, 977 n.9 (S.D. Tex. 2012) (Ellison, J.). Anyhow, the parties' conduct—Shih's decision to "Accept Assign?" and Blue Cross's decision to pay him, at

least in part, for services rendered to plan participants—may have implied a waiver of the anti-assignment provision. *See Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 181 (5th Cir. 1967).

Shih makes two more arguments against the conclusion that *Davila* step one is satisfied, but neither is persuasive. Attempting to catch Blue Cross in a bind, Shih contends that Blue Cross argued in another case that only assignments themselves, and not claim forms, are evidence of assignment. That was not, however, Blue Cross's argument in that case; rather, Blue Cross argued that "the assignments themselves, operative language from the assignments, or more information about the claims at issue" was necessary to evaluate the plaintiff's claims. (Doc. 21-2 at 132 (emphasis added).) Shih similarly argues that Blue Cross has previously interpreted its plans' anti-assignment provisions more strictly, but the cases Shih cites involved different Blue Cross plans with different anti-assignment provisions that did not contain the clear carve-out for written assignments involved here. (*See* Doc. 21-2 at 105.) In any event, with respect to both of the foregoing arguments, Shih cites no caselaw for his proposition that Blue Cross is estopped from interpreting an assignment provision from a different plan in a different jurisdiction differently from how it interprets the assignment provision here.

In short, because Shih could have sought to recover from Blue Cross on behalf of the 13 patients who executed assignments, he could have brought some of his claims under ERISA.

### B. *Davila* Prong Two

Defendants also prevail on the second prong of *Davila*, i.e., whether Blue Cross's actions implicated an "independent legal duty" aside from ERISA. Shih's quantum meruit claim, at least, does not implicate such a duty. That claim arises from the theory that "Defendants were paid premiums by the members for out-of-network emergency and/or pre-authorized services coverage, pursuant to said premiums, and Defendants were legally obligated to reimburse health providers

who rendered medical services to their members or dependents" and that Shih "rendered valuable services by providing medical care to the Patients . . . which satisfied Defendant's contractual and legal obligations to their members and dependents." (Doc. 1-29 at 28.) These allegations facially implicate only legal obligations arising out of the plan and thus ERISA. Indeed, the Fifth Circuit has held quantum meruit claims preempted and noted that, "if not preempted," such claims "would allow any provider who has provided care for which the ERISA plan denied coverage to challenge the ERISA plan's interpretation of its policies in state court." *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 286–87 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012).

Shih's primary argument against this conclusion is that he has challenged only the extent, and not the fact, of coverage. This is a non sequitur. Shih is correct that the Fifth Circuit has held that certain claims between a provider and insurer are not preempted where they challenge only the extent and not the fact of coverage. *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009). But that case involved a separate contract between an in-network provider and an insurer, and concerned a dispute over "fee schedules . . . [that] all refer[red] back to" that contract. *Id.* The holding, then, was limited to the unremarkable conclusion that a contract claim disputing the amount of reimbursement under an in-network agreement does not arise under ERISA. *See id.* at 531.

The situation is different regarding a quantum meruit claim like Shih's. Here, for at least some of the patients for whose treatment he seeks to recover, Shih cannot point to any "independent legal duty" under which Defendants would have been unjustly enriched save for their obligation to Shih's assignors under the plan. To be sure, this is not true for all of the patients whose reimbursements Shih contests: Shih points out, correctly, that Defendants pre-authorized

5

treatment for some disputed patients, and that this pre-authorization gave rise to an implied contract separate from any ERISA-plan-related duties. But this point is immaterial, because Shih admits that other disputed patients received non-preauthorized emergent care—and for those patients, his quantum meruit claim necessarily depends on the plan. Indeed, as noted, the Petition alleges in support of the quantum meruit claim that "Defendants were paid premiums by the members for out-of-network emergency . . . coverage, [and] pursuant to said premiums, . . . Defendants were legally obligated to reimburse [Shih]." (Doc. 1-29 at 28.) That claim necessarily implicates the ERISA-governed plan and is therefore completely preempted. That conclusion in turn resolves the jurisdictional dispute and thus this motion.

### III. CONCLUSION

For the foregoing reasons, the Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 20th day of August, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE