United States District Court
Southern District of Texas
**ENTERED**
February 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PATRICK SHIH, M.D., P.A.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| VS. § | **CIVIL ACTION NO. 4:21-CV-01530** |
| § | |
| **BLUE CROSS & BLUE SHIELD OF** § | |
| **TEXAS INC,** *et al.*, § | |
| § | |
| **Defendants.** § | |

## MEMORANDUM & ORDER

Pending before the Court is Plaintiff Patrick Shih, M.D., P.A.'s Motion for Reconsideration of the Court's Order denying remand on August 20, 2021 (Doc. 33), as well as the Parties' Joint Motion to Modify the Scheduling Order (Doc. 39). The Court held a hearing on these motions on December 17, 2021, at which it took the motions under advisement. Plaintiff subsequently submitted a Notice of Supplemental Authority (Doc. 44), and Defendant responded (Doc. 46), as to the Motion for Reconsideration.

After considering the Parties' oral argument and the various filings related to the issue of remand, the Court **DENIES IN PART AND GRANTS IN PART** Plaintiff's Motion for Reconsideration. The Court, which now retains jurisdiction over this case, also **GRANTS** the Parties' Joint Motion to Modify. (Doc. 39.) The Court sets forth its reasoning below.

### I.   BACKGROUND

Plaintiff Patrick Shih, M.D., P.A. ("Shih") brought this medical billing dispute against Blue Cross & Blue Shield of Texas, Inc. ("BCBSTX" or "Defendant") and various employers whose health plans BCBSTX administers. Shih allegedly provided both emergent and pre-

authorized non-emergent medical services, as an out-of-network provider, to over 200 patients with BCBSTX plans, and that BCBSTX underpaid Shih by nearly $4 million. Shih sued Defendants in state court on six contract theories, as well as for tortious interference, violation of unspecified Texas health laws, and violation of the Texas Prompt Payment of Claims Act. BCBSTX removed.

Shih filed a Motion to Remand on June 9, 2021. (Doc. 21.) The Court denied that motion at a hearing on August 20, 2021; it also issued a Memorandum & Opinion ("Order") as to the bases of its decision for the benefit of the parties. (Doc. 32.) Plaintiff filed a Motion for Reconsideration (Doc. 33) as to the Court's ruling on the Motion to Remand. The Motion for Reconsideration is now before the Court. Also pending is an Agreed Motion to Modify the Scheduling Order (Doc. 39).

## II.  MOTION FOR RECONSIDERATION

### A. Legal Standards

"Rule 59(e) governs motions to alter or amend a final judgment," while "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action[.]'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). The Court has not yet issued a final judgment and thus applies Rule 54(b).

Under Rule 54(b), "district courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted). Nevertheless, motions for reconsideration under Rule 54, like those under Rule 59, "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l. Paper*

2 / 15

*Co.*, 875 F.2d 468, 473 (5th Cir. 1989); *see also S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013). "[T]his broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *SnoWizard*, 921 F. Supp. 2d at 564–65. "A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005). Classic reasons for granting reconsideration include: "(1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) manifest injustice would otherwise result; (4) there has been serious misconduct by counsel; and (5) an intervening change in controlling law alters the appropriate outcome." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002).

This case concerns ERISA preemption. ERISA preemption is governed, as the parties agree, by the two-prong test of *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). Under *Davila*'s conjunctive test, removal is appropriate if (1) the plaintiff, "at some point in time, could have brought Plaintiff's claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210.

B. Reconsideration of Remand

Plaintiff offers three grounds for reconsideration: (1) as to the first *Davila* prong, that the Court erroneously deemed a jurisdictional argument waived; (2) that the Court misapplied the standard for the second *Davila* prong and failed to specifically address the "*Memorial Hospital* Rule"; and (3) that the Court improperly shifted the burden of proof for removal to the Plaintiff. In the alternative to remand, Plaintiff seeks leave to voluntarily dismiss its claims relating to patient encounters forming the basis of federal jurisdiction.

1. **Davila** *Prong One*

In the Order now on reconsideration, the Court held:

> *Shih also contends that the Blue Cross plans at issue contained anti-assignment provisions that void any alleged assignments—but this argument is based on the plans' general anti-assignment provision and ignores their express carve-out for a "written assignment of benefits." And to the extent that Shih contended in [its] Reply Brief that the anti-assignment's carve-out provision was not triggered because the "written assignment [was not] delivered to the Carrier with the claim for benefits," that argument was not raised in the Motion to Remand and therefore will not be considered.*

(Doc 32, at 3-4) (citations omitted).

Plaintiff argues that it was a clear error of law to exercise subject-matter jurisdiction based on a finding that Plaintiff waived the anti-assignment issue. *See*, *e.g.*, *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (citations omitted) ("No party can waive the defect or consent to jurisdiction . . . No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own."); *Goodrich v. U.S.*, 3 F.4th 776, 778–79 (5th Cir. 2021) ("Jurisdiction cannot be waived, and it is the duty of a federal court first to decide, *sua sponte* if necessary, whether it has jurisdiction before the merits of the case can be addressed. When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case and must dismiss it.") (internal quotation marks and citations omitted). Because jurisdiction is not waivable, Plaintiff urges the Court to "give a fresh eye to the anti-assignment issue, and its potential implications to the validity of the any judgment rendered in this Court." Doc. 33, at 6-7. The Court agrees with Plaintiff that subject-matter jurisdiction cannot be waived. It thus reconsiders the applicability of the anti-assignment provision on the merits.

*i.* <u>The Anti-Assignment Provisions</u>

The first prong of *Davila* is met "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. However, "when an ERISA plan contains a valid anti-assignment provision, a putative assignment to a healthcare provider is invalid and cannot bestow the provider with standing to sue under the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (citing *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352-53 (5th Cir. 2002)). The Parties agree that a written assignment of benefits, which creates derivative standing, is distinct from a direct-payment authorization. *See Dialysis Newco*, 938 F.3d at 254 (5th Cir. 2019) ("[T]he district court order[] . . . erred by failing to see the degree of distinction between a direct-payment authorization and a full-on assignment of benefits. A direct-payment authorization means only that the beneficiary tells the administrator to forward the checks owed to him or her on to the provider instead. An assignment of benefits is more than that."). But they disagree as to whether the anti-assignment provisions here allowed the assignment of benefits, or merely authorized direct payments.

"In construing ERISA plan provisions," the Fifth Circuit interprets "the contract language 'in an ordinary and popular sense as would a person of average intelligence and experience[.]'" *Garcia v. Best Buy Stores L.P.*, No. CIV. A. H-07-851, 2009 WL 2982788, at *8 (S.D. Tex. Sept. 10, 2009) (*quoting Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997)), *aff'd*, 416 F. App'x 384 (5th Cir. 2011). "[W]hen construing the policy's language, the court must give effect to all contractual provisions so that none will be rendered meaningless." *Holman v. Life Ins. Co. of N. Am.*, 533 F. Supp. 3d 502, 509 (S.D. Tex. 2021). "If policy language is worded so that it

can be given a definite or certain legal meaning, it is not ambiguous and [will be] construe[d] [] as a matter of law." *Id.* (internal quotation marks and citation omitted) (alteration in original).

The ERISA Plans at issue contain a provision that reads:

> Except as provided in the section **Assignment and Payment of Benefits**, rights and benefits under the Plan are not assignable, either before or after services and supplies are provided.

Under an ordinary construction of this language, the Plans provide that rights and benefits are assignable as detailed in another section: the carve-out provision titled, "Assignment and Payment of Benefits." That section reads:

> **Assignment and Payment of Benefits**
> If a written assignment of benefits is made by a Participant to a Provider and the written assignment is delivered to the Carrier with the claim for benefits, the Carrier will make any payment directly to the Provider.

McMillin Decl., Exs. B-1 at 19, 85, C-1 at 19, 79, D-1 at 18, 86, E-1 at 18, 83, F-1 at 19, 78, G-1 at 18, 88, H-1 at 29, 95, I-1 at 19, 78, J-1 at 20, 89, K-1 at 19, 78, L-1 at 18, 76, and M-1 at 18, 82 (emphasis in original).

Under an ordinary construction of this carve-out provision, the Plans provide that assignments "of benefits" are allowed when they are: (1) in writing and (2) made by the Participant (or member) to a Provider. Indeed, Plaintiff has conceded that at least 13 patients have executed written assignments. Doc. 27 at 4; Doc. 32 at 2. As a separate provision, the carve-out also describes the circumstances in which an insurer will make payment to an out-of-network provider directly rather than to a member to whom the payment is owed—that is, when the provider (1) has a written assignment of benefits from the member and (2) delivers the written assignment of benefits to the insurer. The Court concludes that, under the Plans at issue, the delivery of the written assignment is a condition for automatic direct payment in the standard claim handling process, but not for the assignment of benefits itself.

Reading the carve-out provision as Plaintiff proposes renders various portions of it superfluous, contrary to the canons of contract construction. *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) ("[A] contract should be interpreted as to give meaning to all of its terms . . . and that none are deemed superfluous."). The broader anti-assignment provision allows assignment of rights and benefits "as provided in the section **Assignment and Payment of Benefits**." Construing the section "Assignment and Payment of Benefits" as only allowing direction of payment renders superfluous both the title of the section and the part of the carve-out provision stating that the rights can, under certain conditions, be assigned.

Plaintiff's argument that *Defendant's* reading would render meaningless the broad anti-assignment provision is unavailing. The carve-out, again, allows "a written assignment of benefits [] made by a Participant to a Provider." The limiting clause, "to a provider," clarifies that the broad anti-assignment provision still plays a function. Defendants explained at the hearing that the anti-assignment provision prevents the assignment of payments to cover unrelated debt. *See Hermann Hosp. v. MEBA Med. & Ben. Plan*, 959 F.2d 569, 574 (5th Cir. 1992) ("We interpret the anti-assignment clause as applying only to unrelated, third-party assignees – other than the health care provider of assigned benefits – such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits."), *overruled in part on other grounds by Access Mediquip, L.L.C. v. United Health Care Ins. Co.,* 698 F.3d 229 (5th Cir. 2012); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 451-53 (3d Cir. 2018) (articulating a provider and a carrier's policy arguments on the enforcement of anti-assignment provisions). It is consistent with this purpose to

broadly prohibit assignment, but to permit "written assignment of benefits . . . to a Provider," allowing payment to that provider upon delivery to a carrier with a claim.

Accordingly, the Court finds that assignment of benefits was possible under the Plans based on an ordinary construction of the anti-assignment provisions.

       ii.  <u>Submission of Assignments to BCBSTX and ERISA Standing</u>

Plaintiff's assertion that it never submitted assignments to BCBSTX is not relevant to the *Davila* prong one analysis. The Court agrees with Defendant that the only issue is whether a plaintiff has ERISA standing, which it obtains through assignments—which Plaintiff had, as the Court has previously found, *see* Doc. 32 at 2-3—that are valid, *see* Sec. II.B.1.i. *Davila* prong one looks at whether, "<u>at some point in time</u>, [the Plaintiff] <u>could have</u> brought [its] claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210 (emphasis added). Consequently, courts have found that providers, like Plaintiff, have ERISA standing if they possess assignments, without requiring that the provider purport to enforce Plaintiff's rights under those assignments. *See, e.g., Spring E.R., LLC*, 2010 U.S. Dist. LEXIS 13565, at *7-14 (finding *Davila* prong one met although provider disclaimed it was suing as an assignee); *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, c, 699 (N.D. Ill. 2014) (finding *Davila* prong one met although provider executed a waiver of assignments prior to filing suit).

  2. **Davila *Prong Two***

Under the second prong of *Davila*, the Court must determine whether BCBSTX's actions as alleged by Plaintiffs implicate any legal duty independent of the duties under ERISA. *Davila*, 542 U.S. at 210. "A legal duty is not independent of ERISA if it 'derives entirely from the particular rights and obligations established by [ERISA] benefit plans.'" *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, No. CIV.A. H-05-4389, 2006 WL 1663752, at *7

(S.D. Tex. June 13, 2006) (quoting *Davila*, 542 U.S. at 210). If a single claim fails to implicate an independent legal duty, then complete preemption exists, and the Court may not remand. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337-38 (5th Cir. 1999) (explaining that the court may exercise removal jurisdiction over completely preempted claims and supplemental jurisdiction over the remaining claims); *see also*, *e.g.*, *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, No. H-05-4389, 2006 WL 1663752, at *9 (S.D. Tex. June 13, 2006) (denying motion to remand and stating, "[t]he breach of contract claim is completely preempted, giving this court federal removal jurisdiction over the claim and supplemental jurisdiction over all remaining claims.").

The Court previously found that this prong had been met because "Shih's quantum meruit claim, at least, does not implicate" an "independent legal duty" aside from ERISA. M&O, Doc. 32, at 4. The Court further wrote:

> Indeed, the Fifth Circuit has held *quantum meruit* claims preempted and noted that, "if not preempted," such claims "would allow any provider who has provided care for which the ERISA plan denied coverage to challenge the ERISA plan's interpretation of its policies in state court." *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 286–87 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012).

First, Plaintiff argues that the Court committed error by basing its analysis on *Access*, which concerns conflict preemption rather than the *Davila* "independent duty" analysis. Plaintiff argues that conflict preemption is a fact-sensitive defense that defendants can assert in Texas state court but is not a basis for removal jurisdiction. *See*, *e.g.*, *Gilbert v. Baker Hughes Inc.*, 2014 WL 4402125, at *2 (S.D. Tex. Sept. 5, 2014) (Ellison, J.) (citations omitted) ("Section 502(a) is a statute that completely preempts state law, while section 514(a) is merely a conflict preemption provision. Complete preemption under section 502 can support removal jurisdiction, but conflict preemption only provides a federal defense to a state law claim.").

However, as Defendant argues, the Court's analysis was based on *Davila* complete preemption rather than conflict preemption as in *Access*. The Court cited *Access* to explain that, if ERISA did not preempt quantum meruit claims of the kind Plaintiff brings here, a provider could circumvent ERISA even though the provider squarely bases a claim on obligations owed under an ERISA plan.

<u>Second</u>, Plaintiff points to the "*Memorial Hospital* Rule" as providing a duty independent of ERISA. This rule, Plaintiff argues, holds that ERISA complete preemption does not occur when a defendant "preauthorized" or "induced" a provider to render services. Contrary to Plaintiff's assertion, the Court addressed this issue, noting that this "point is immaterial, because Shih admits that other disputed patients received non-preauthorized emergent care—and for those claims, Plaintiff's quantum meruit claim necessarily depends on the plan." Doc. 32 at 6.

In any event, the cases on which Shih relies are distinguishable. For example, *Memorial Hospital* itself addressed verification of benefits, rather than preauthorization. There, the Fifth Circuit held that ERISA did not completely preempt a provider's negligent misrepresentation claim because it was based on an independent legal duty: the insurer's misrepresentation that the plan covered certain services when the plan did not. Plaintiff also cited *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, but that case addressed conflict, not complete, preemption. 164 F.3d 952 (5th Cir. 1999). As Plaintiff itself argues at length, the Court cannot base its reasoning on conflict preemption standards. Regardless, in that case the Fifth Circuit found that ERISA preempted a provider's breach of contract claim, which was "based on defendants' alleged failure to pay the full amount of benefits due under the terms of the policy." *Id.* at 955. Moreover, in *Mem'l Hermann Hosp. Sys. v. Aetna Health Inc.,* the court held that the provider's state law claims were not preempted because the provider had identified independent

10 / 15

legal duties, including duties owed under managed care contracts and certain statutes. 2007 WL 1701901, at *5-6 (S.D. Tex. June 11, 2007). Unlike in those cases, Plaintiff has failed to identify any independent legal duty for its quantum meruit claim.

Third, Shih argues that a finding that Plaintiff's quantum meruit claim does not implicate an independent legal duty is insufficient by itself to meet *Davila* prong two. Shih claims that the Court misapplied the preemption standard, and that Plaintiff can avoid ERISA complete preemption if *one* of its causes of action rests on an independent legal duty. Plaintiff supports this argument by citing out-of-circuit caselaw, which Plaintiff claims is applicable because the Fifth Circuit "adopt[ed] the reasoning of the Third and Ninth Circuits" in *Lone Star OB/GYN v. Aetna* 579 F.3d 525, 531 (5th Cir. 2009). In rebuttal, Defendant argues that prong two asks whether any *one* cause of action *lacks* an independent legal duty; if so, then ERISA completely preempts that cause of action, rendering the entire case removable.

Plaintiff relies on inapposite out-of-circuit law; the Court already explicitly distinguished *Lone Star* in its Order. Doc. 32 at 5. Further, given the Fifth Circuit's broad interpretation of ERISA's preemptive power, the Court must agree with BCBSTX that the lack of an independent legal duty as to the quantum meruit claim completely preempts this cause of action. *See Giles*, 172 F.3d at 337; *Spring E.R., LLC*, No. H-09-2001, 2010 U.S. Dist. LEXIS 13565, at *20 ("Because Defendants have demonstrated that at least one of Plaintiff's stated claims is completely preempted by ERISA, this court cannot remand this action. As such, this Court need not reach the question of whether Plaintiff's quantum meruit and Prompt Pay Act claims are also preempted by ERISA. That Plaintiff's implied contract claim falls within the ERISA benefits scheme is sufficient for this Court to determine that this case was properly removed.").

Accordingly, the Court again concludes that Defendant has met its burden as to the second prong of *Davila*.

### 3. Burden of proof

Section 1441(a) of Title 28 of the United States Code allows for the removal of any civil action over which a United States district court has original jurisdiction. 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted). The burden is met by demonstrating federal jurisdiction by a preponderance of the evidence. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995).

The Court is unconvinced by Plaintiff's contention that the Court mistakenly placed the burden on Plaintiff by drawing factual findings and inferences in favor of Defendant. The Court based its ruling in part on Plaintiff's own concession that it in fact had received assignments from 13 members. Plaintiff's factual contention that Plaintiff's submission of claims data to BCBSTX was not intended to indicate that it had received assignment, was, as the Court has held, "immaterial."

For the reasons discussed above, the Court finds that Defendant has met its burden by a preponderance of the evidence to establish complete ERISA preemption under *Davila*. The Court therefore **DENIES** Plaintiff's Motion for Reconsideration of the Court's August 20 Order denying remand.

### C. Leave to Voluntarily Dismiss Certain Claims

Plaintiff seeks to dismiss the claims relating to the patient encounters forming the basis for federal jurisdiction. The Court will apply the Fed. R. Civ. P. 15(a)(2) standard in considering this request for alternative relief. *See Brfhh Shreveport v. Willis-Knighton Med. Ctr.*, 2020 WL

1490717, at *1 n.1 (W.D. La. Mar. 25, 2020) (where motion was filed under Rule 41, as Plaintiff did here, the court applied the Rule 15 standard based on Plaintiff's concession that it applies).

Under Rule 15(a)(2), pleadings may be amended "only with the opposing party's written consent or the court's leave." "The trial court should consider whether permitting the amendment would cause undue delay in the proceedings or undue prejudice to the nonmoving party, whether the movant is acting in bad faith or with a dilatory motive, or whether the movant has previously failed to cure deficiencies in Plaintiff's pleadings by prior amendments." *Chitimacha Tribe of La. v. Harry L. Laws*, 690 F.2d 1157, 1163 (5th Cir. 1982). In the absence of any of these reasons, including futility of amendment, the leave should be "freely given." *Comb v. Benji's Special Educ. Acad.*, 745 F. Supp. 2d 755, 761 (S.D. Tex. 2010) (Ellison, J.) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2)).

Defendant argues it would suffer undue prejudice if Plaintiff dismissed fourteen of the patient encounters forming a basis for federal jurisdiction—the thirteen for which Shih received an assignment, and one that allegedly related to the Federal Employees Health Benefits Act. Defendant argues that, even if the fourteen claims were dismissed, federal jurisdiction would still exist based on twenty remaining disputedly federal claims. It further states that, should the claims be dismissed without prejudice, Plaintiff would be able to refile based on those factual allegations, potentially resulting in parallel lawsuits with the same Parties. Defendant concedes that that "the prospect of a single suit proceeding in state court is not prejudice," Doc. 36 at 24, and that "[f]orum shopping by itself . . . is insufficient to show plain legal prejudice." *Id.* (citing *Jimenez v. Martin*, No. 5:15-CV-38, 2015 U.S. Dist. LEXIS 182829, at *8-9 (S.D. Tex. June 22, 2015)).

In the Reply, to resolve any dispute as to the number of patient encounters forming the basis of federal jurisdiction, Plaintiff offers to voluntarily dismiss all 34 encounters at issue, including the twenty for which Plaintiff admitted it never received an assignment of benefits. Doc. 37 at 10 n. 7.

The Court is unconvinced that Defendant would suffer prejudice if it granted Plaintiff leave to voluntarily dismiss all 34 disputedly federal claims. There is little to no risk of parallel state and federal lawsuits because it would be illogical for Plaintiff to refile in *state* court the claims forming *federal* jurisdiction here. Defendant admits that adjudication of a single suit in a court of appropriate jurisdiction would not prejudice it. Because Defendant has failed to show any factors counseling toward denial of leave, which otherwise must be "freely given," the Court **GRANTS** Plaintiff's alternative request for leave to amend to voluntarily dismiss the disputedly federal claims.

### III.     MOTION TO MODIFY

The Court, retaining federal jurisdiction, **GRANTS** the Parties' Joint Motion to Modify. The Parties' proposed scheduling order, Doc. 39-1, will be entered.

\*          \*          \*

The Court **DENIES IN PART AND GRANTS IN PART** the Motion for Reconsideration as follows: the Court denies reconsideration of its previous denial of remand based on ERISA complete preemption under *Davila*, but grants Plaintiff leave to amend to voluntarily dismiss the 34 disputedly federal claims.

The Motion to Modify is **GRANTED**.

**SIGNED** at Houston, Texas on February 10, 2022.

_____
Keith P. Ellison
United States District Judge